### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DUWANN ELLIOTT,** | Crim. No. 21-75 (WJM)<br><br><br>**OPINION** |

Defendant Duwann Elliott moves to suppress evidence he alleges was illegally seized. ECF No. 51.  For the reasons below, Defendant's request for an evidentiary hearing and for leave to file additional motions are both **GRANTED.**

## I.    FACTUAL BACKGROUND

On or about September 26, 2019, uniformed and plainclothes law enforcement officers including members of the Newark Police Department ("NPD") were conducting surveillance and monitoring for any unusual activity at a funeral home in the area of Roseville Avenue and Park Avenue in Newark, New Jersey ("Funeral Home"). Because the funeral was for a victim of a homicide that had occurred on September 22, 2019, law enforcement suspected the possibility of retaliation. ECF No. 53-1, Newark Police Incident Report.

According to the police report, at approximately 11:35 a.m., Detectives Vincent Silva and Edwin Carrero were conducting surveillance outside of the Funeral Home from an unmarked vehicle positioned in a supermarket parking lot near the Funeral Home ("Parking Lot"). Detective Silva observed a female sitting in the driver's seat ("Driver") of a white BMW X5 Sports Utility Vehicle ("SUV"), which was parked in the same lot facing away from the Funeral Home. The law enforcement vehicle was parked head on to the SUV. *Id.*  Detective Silva noticed the Driver repeatedly peering over her left shoulder towards the Funeral Home and looking at her cell phone. Detective Carrero observed the same conduct, viewed the Driver more closely using 12 x 50 binoculars, and took photographs of her with his cell phone. ECF No. 53-3. The Driver briefly left the SUV to buy ice cream from an ice cream stand and then returned to the SUV and continued to look towards the Funeral Home and her cell phone.

1

At approximately 12:12 p.m., Detective Silva observed Defendant walk from the direction of the Funeral Home to the driver side of the SUV and have a brief conversation with the Driver. Defendant challenges that the officers were able to see what the Government alleges occurred next. According to the Government, Defendant then walked around the rear of the SUV, opened the front passenger side door, reached towards the front passenger seat, and appeared to unravel a dark colored sweater. Next, Detective Carrero purportedly observed Defendant take a dark object from the SUV, place it into his waistband, and cover it with the bottom of his white t-shirt, all while looking around his immediate vicinity. Detective Carrero then claims he saw Defendant grab a black hooded sweater from the passenger seat and tightly wrap the sleeves of the sweater around his waist while firmly adjusting the knot before walking towards the Funeral Home. Detective Carrero notified additional law enforcement officers to further investigate.

Detectives Steven Resendes and Marc Castro, upon approaching Defendant, purport to have asked him whether he was in possession of any illegal contraband or a firearm. In response, Defendant immediately grabbed his waistband area and pulled away from law enforcement. Law enforcement frisked Defendant's waistband, found a .40 caliber Black Glock 23 and 15 rounds of hollow nose ammunition, and then placed the Defendant under arrest. ECF No. 53-1. In contrast, Defendant certifies that upon approach, the officers immediately seized and placed him under arrest without first identifying themselves or questioning him. ECF No. 55-2. Defendant claims that he was searched after his arrest. *Id.*

NPD charged Defendant with unlawful possession of a weapon pursuant to *N.J.S.A.* 2C:39-5B(1); unlawful possession of a large capacity ammunition magazine pursuant to *N.J.S.A.* 2C:39-3J; and unlawful possession of hollow nose bullets pursuant to *N.J.S.A.* 2C:39-3F(1). The matter was transferred to the District of New Jersey and on January 15, 2021, Defendant was indicted by a federal grand jury and charged with Possession of a Firearm and Ammunition by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1).

## II.   DISCUSSION

Defendant contends that his seizure was not a valid investigatory stop supported by reasonable suspicion as required under *Terry v. Ohio,* 392 U.S. 1 (1968), but rather, was a warrantless arrest that lacked probable cause in violation of the Fourth Amendment. Thus, Elliott moves to suppress the gun and ammunition evidence as fruits of an unlawful search and seizure, or that an evidentiary hearing be held. The Government's view, however, is that Defendant has not established the need for an evidentiary hearing because law enforcement conducted a valid *Terry* investigatory stop based on reasonable suspicion and that upon discovery of a gun and ammunition, probable cause justified a warrantless arrest.

A hearing regarding a motion to suppress evidence is necessary when a defendant presents a "motion [that] is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and

(2) there are disputed issues of material fact that will affect the outcome . . . ." *E.g.*, *United States v. Fattah*, 858 F.3d 801, 810 (3d Cir. 2017) (quoting *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010)); *see also United States v. Panitz*, 907 F.2d 1267, 1273-74 (1st Cir. 1990) ("The test for granting an evidentiary hearing in a criminal case should be substantive: [D]id the defendant make a sufficient threshold showing that material facts were in doubt or dispute?").

### A. Defendant's Motion to Suppress Evidence

#### 1. Reasonable Suspicion for *Terry* stop

Defendant has not presented an alternate version of the events in the Parking Lot as described by Detective Carrero[1] but disputes that retaliation would have been suspected at the funeral of the homicide victim, that the Driver's conduct was suspicious, that his movements were furtive, and that Detective Carrero, from his vantage point, could possibly have observed Defendant placing a "dark object" in his waistband through 1) a closed driver's side door; 2) an occupied vehicle; and 3) a busy parking lot with foot traffic and other parked vehicles. ECF No. 51-1, Def. Mot. at 7-8.

Even assuming that Detective Carrero could not see Defendant putting a "dark object" in his waistband, the Government contends that the totality of the circumstances weighs in favor of finding that there was reasonable suspicion to conduct a *Terry* stop: the events at issue occurred in the context of surveillance necessitated by law enforcement's belief that retaliation might occur at the Funeral Home; the Driver's conduct aroused the suspicion of two law enforcement officers with approximately 20 years of collective experience; Defendant was looking around the immediate vicinity while at the SUV, and then he walked towards the Funeral Home with a sweater wrapped around his waistband, which is an area of the body from which Detective Carrero has often recovered firearms from defendants.

Once law enforcement has reasonable suspicion that the defendant intended to conceal a weapon, they are justified in searching for the weapon in the scope of a valid *Terry* stop. *United States v. Wallace*, 450 F. App'x 175, 177 (3d Cir. 2011) (quoting United States v. Robertson, 305 F.3d 164, 170-71 (3d Cir. 2002). Thus, to the extent that law enforcement frisked Defendant's waistband and found the weapon and ammunitions in the scope of a valid *Terry* stop, then the discovery of the gun and of ammunitions are factors in the determination of probable cause for a warrantless arrest.

However, not only does Defendant dispute that law enforcement had reasonable suspicion to stop him as he was "walking harmlessly on the streets of Newark," Defendant

---

[1] The Government suggests that Detective Carrero's description of the Parking Lot events is corroborated by surveillance footage from the Parking Lot. ECF No. 53, Gov. Opp'n Br. at 8. However, the Government has not provided the Court with a copy of that surveillance footage.

posits that officers did not conduct a valid investigatory stop pursuant to *Terry* because he was seized and placed under arrest prior to questioning and before he "pulled away" or was frisked. Therefore, Defendant asserts that his warrantless arrest required a showing of probable cause, not merely reasonable suspicion.

### 2. Probable Cause for Warrantless Arrest

If, as the Government contends, the warrantless arrest occurred after the frisk that occurred in the scope of the *Terry* stop, then the discovery of the gun and of ammunitions are factors in the determination of probable cause. If, however, the arrest occurred prior to the frisk, then the gun and ammunitions cannot be considered in the probable cause analysis. *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (recognizing that timing of seizure could favor one party or the other since flight from lawful frisk or arrest can contribute to reasonable suspicion analysis but plays no role if seizure occurred before attempted escape).

Because the order of events is significant to determine whether reasonable suspicion and probable cause existed, Defendant's motion raises "issues of fact material to the resolution of the defendant's constitutional claim [of a violation under the Fourth Amendment]," Hines, 628 F.3d at 105, *cert. denied*, 563 U.S. 952 (2011). Defendant's request for an evidentiary hearing is therefore **granted**.

### B. Evidentiary Hearing

Defendant argues that the Government should not be granted any favorable inferences at the evidentiary hearing due to NPD's failure to preserve certain evidence that would have corroborated his version of events. Specifically, Defendant claims that the discovery has been destroyed or not properly preserved as follows:

1. Witnesses: Government unable to confirm other NPD who witnessed Defendant's arrest
2. Body Cameras: not produced or preserved
3. Dash Cameras: not produced
4. Surveillance Footage at intersection of Roseville and Park Avenues where arrest occurred: not produced or preserved
5. Surveillance Footage from private entities where arrest occurred: NPD requested and produced footage from Bravo supermarket, but did not request or preserve from other entities
6. Radio Transmission: not produced or preserved from 11:35 AM – 12:16 PM referenced in Detective Carrero's report

Because Defendant raises this argument for the first time in his reply brief, the Government has not had an opportunity to respond. The Government may provide a response on this issue by no later than **November 2, 2021**.

**C.** **Defendant's Motion for Leave to File Additional Motions As they Become Appropriate**

Because discovery remains ongoing, Defendant asks that he be permitted to file additional motions as necessary until a trial date is set. The Government does not oppose Defendant's motion so long as any additional motions are limited to issues raised by future Government disclosures. Accordingly, Defendant's motion to file additional motions is **granted** to the extent that such motions are limited to issues raised by future Government disclosures.

## III.   CONCLUSION

For the reasons noted above, Defendant Duwann Elliott's request for an evidentiary hearing and his motion for leave to file additional motions limited to issues raised by future Government disclosures are both **granted**. An evidentiary hearing shall be held on **Monday, November 8, 2021 at 12 PM.**

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date:  October 27, 2021

5