UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DUWANN ELLIOTT, | Crim. No. 21-75 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

This matter comes before the Court on Defendant Duwann Elliott's Motion to Suppress evidence of a firearm and ammunition as fruit of an unlawful search and seizure. ECF No. 51. Finding there to be issues of material fact, the Court granted Defendant's request for an evidentiary hearing. ECF No. 56. An evidentiary hearing was held on November 22 and 30, 2021. For the reasons set forth below, Defendant's motion to suppress is **denied**.

**I.     BACKGROUND**

To the extent that any portion of the finding of facts set forth below differs from those alleged by Defendant, it is the result of the determinations as to credibility, relevance, and the weighing of evidence. During the hearing, the Government presented the testimonies of Detectives Edwin Carrero and Marc Castro, which the Court found to be straightforward and credible notwithstanding minor and immaterial inconsistencies highlighted by defense counsel.[1]

On or about September 26, 2019, uniformed and plainclothes law enforcement officers including members of the Newark Police Department ("NPD") were conducting surveillance and monitoring for any unusual activity at a funeral home in the area of Roseville Avenue and Park Avenue in Newark, New Jersey ("Funeral Home"). Because

---

[1] It is well-settled that at a motion to suppress hearing, "'the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge.'" *United States v. Folks*, 452 F. Supp. 3d 238, 249 (W.D. Pa. 2020) (citing *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007); *United States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir. 1984).

1

the funeral was for a victim of a homicide that had occurred on September 22, 2019, law enforcement suspected the possibility of retaliation. ECF No. 53-1, Newark Police Incident Report.

At approximately 11:35 a.m., Detectives Vincent Silva and Edwin Carrero, both dressed in plainclothes, were conducting surveillance outside of the Funeral Home from an unmarked or "unconventional" vehicle[2] positioned at the Bravo Supermarket parking lot ("Parking Lot") near the Funeral Home. Detective Silva observed a female sitting in the driver's seat ("Driver") of a white BMW X5 Sports Utility Vehicle ("SUV"), which was parked in the same lot facing away from the Funeral Home. The law enforcement vehicle was parked head on to the SUV. *Id.* Detective Silva noticed the Driver repeatedly peering over her left shoulder towards the Funeral Home and looking at her cell phone. Detective Carrero observed the same conduct, viewed the Driver more closely using 12 x 50 binoculars, and took photographs of her with his cell phone. ECF No. 53-3.

At approximately 12:12 p.m., Detective Carrero observed Defendant walk from the direction of the Funeral Home to the driver side of the SUV and have a brief conversation with the Driver. He then saw Defendant walk around the rear of the SUV and open the front passenger side door where he reached in and appeared to grab an article of clothing, remove an object from that article of clothing, and place that object in his front waistband while looking around his immediate vicinity. Next, Detective Carrero saw Defendant grab a black hooded sweater from the passenger seat and secure the sweater around his waist with a knot before walking towards the Funeral Home. Detective Carrero's observations of Defendant's conduct are corroborated by video surveillance footage from the Parking Lot.[3] Detective Carrero then radioed Detectives Steven Resendes and Marc Castro. He informed them that Defendant could be in possession of a possible weapon and gave them a description of Defendant so that they could further investigate.

---

[2] Detective Carrero explained that an "unconventional" vehicle has no police insignia or lights on the outside of the vehicle and also does not have a dash camera. As Detectives Carrero and Silva were in plainclothes, they were also not wearing body cameras. The Court rejects Defendant's request not to grant any favorable inferences to the Government due to the absence of any body or dash camera footage. Detective Carrero explained that officers wearing plainclothes were not required to wear body cameras and that most unconventional vehicles were not equipped with dash cameras. *See United States v. Zeno*, 2021 WL 3187497, at *10-11, __ F. Supp.3d __ (M.D. La. July 28, 2021) (finding police officer did not violate police policy by not having dash camera because police policy did not require all vehicles be equipped with dash cameras and even if police officer had violated internal police policy, that "does not necessarily equate with a Fourth Amendment violation warranting suppression.")

[3] Detective Carrero testified he did not view the surveillance footage until the week prior to the evidentiary hearing.

Detective Castro testified that upon being notified by Detective Carrero regarding his observations of Defendant, he exited his unconventional vehicle and approached Defendant, who was standing in front of the Funeral Home. Detective Castro, who was dressed in civilian clothes, first identified himself as a police officer and showed his department-issued badge to avoid being mistaken for a civilian. At that point, Defendant clenched his waistband and appeared startled. When Detective Castro then asked whether Defendant had any weapons or contraband, he started to walk away. Detective Castro told Defendant to stop, then grabbed his arm and quickly frisked Defendant in the waistband area where he felt the butt of a handgun equipped with an extended magazine. The frisk uncovered a .40 caliber Black Glock 23 and 15 rounds of hollow nose ammunition. Detective Resendes then placed Defendant under arrest. ECF No. 53-1.

NPD charged Defendant with unlawful possession of a weapon pursuant to *N.J.S.A.* 2C:39-5(b)(1); unlawful possession of a large capacity ammunition magazine pursuant to *N.J.S.A.* 2C:39-3(j); and unlawful possession of hollow nose bullets pursuant to *N.J.S.A.* 2C:39-3(f)(1). The matter was transferred to the District of New Jersey and on January 15, 2021, Defendant was indicted by a federal grand jury and charged with Possession of a Firearm and Ammunition by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1).

## II.    DISCUSSION

Defendant moves to suppress the gun and ammunition as fruit of an unlawful search and seizure. "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). Once the defendant establishes a factual basis for his motion, the "burden shifts to the government to show that the search or seizure was reasonable." *Id.* The government must prove by a preponderance of the evidence that "each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005).

The Fourth Amendment protects against "unreasonable searches and seizures." *U.S. Const. Amend. IV*. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). One exception to the warrant requirement is set forth in *Terry v. Ohio*, 392 U.S. 1, (1968) and provides that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). "The reasonable suspicion that justifies the *Terry* stop of a suspect also justifies a subsequent protective frisk of that suspect," where officers have a reasonable belief that the suspect is armed and poses a danger to the officers or others. *United States v. Lowe*, 791 F.3d 424, 430 (3d Cir. 2015) (citing *Terry*, 392 U.S. at 30); *Robertson*, 305 F.3d at 170.

Defendant contends that his seizure was not a valid investigatory stop supported by reasonable suspicion as required under *Terry*, but rather, was a warrantless arrest that lacked probable cause in violation of the Fourth Amendment. For the reasons discussed below, the Court finds law enforcement did conduct a valid *Terry* investigatory stop based on reasonable suspicion and that upon discovery of a gun and ammunition, probable cause justified his warrantless arrest.

## A. Reasonable Suspicion for Investigatory Stop

Reasonable suspicion is an "elusive concept," but it demands that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity," and more than a "suspicion or hunch." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *United States v. Sokolow*, 480 U.S. 1, 7 (1989). "In evaluating whether reasonable suspicion existed, a court 'must consider the totality of the circumstances, including the police officer's knowledge, experience, and common-sense judgments about human behavior.'" *United States v. Navedo*, 694 F.3d 463, 468 (3d Cir. 2012) (quoting *Robertson*, 305 F.3d at 167). "[W]hen an officer observes suspicious behavior he reasonably believes is intended to conceal a weapon, he is justified in searching for the weapon." *United States v. Wallace*, 450 F. App'x 175, 177 (3d Cir. 2011). Notably, reasonable suspicion does not require the officer to be "certain that the person is armed." *Id.*

Weighing the totality of the circumstances rather than each fact in isolation, the Court concludes that there was reasonable suspicion to conduct a *Terry* stop and frisk for weapons. *Navedo*, 694 F.3d at 468, 470. Significantly, Detective Carrero credibly testified that he saw Defendant placing a dark object in his waistband, secure a black hooded sweater around his waist with a knot, and then walk towards the Funeral Home. Over the course of his career, Detective Carrero testified that he has often recovered weapons in that area of the body and that in his own experience, that is also where he carries his weapon when off-duty. *See e.g., United States v. Terry*, 518 Fed. Appx. 125, 128-29 (3d Cir. 2013) (finding reasonable suspicion for patdown where defendant was observed grabbing item from vehicle, then making shoving motion towards waistband).

Moreover, even if, as Defendant insists, Detective Carrero's view of Defendant putting a "dark object" in his waistband was obstructed, which this Court finds was not the case, other factors would support a basis for reasonable suspicion. First, the events at issue occurred in the context of surveillance necessitated by law enforcement's belief that retaliation might occur at the Funeral Home. *See Illinois*, 528 U.S. at 124 (2000) ("officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."). That Detective Carrero was not informed by his supervisors regarding the details of the possible retaliation is of no moment. Second, the Driver's conduct while in the SUV could be clearly

4

observed by Detective Carrero. *See e.g.,* Gov.'t Exh. 2A, ECF No. 53-3. Her actions aroused the suspicion of two law enforcement officers with approximately 20 years of collective experience. *See Wallace,* 450 F. App'x at 177 (noting "that an officer may have more experience and training 'to make inferences from and deductions about the cumulative information available' than an untrained person." (citing *United States v. Arvizu,* 534 U.S. 266, 273 (2002)). Third, Defendant has not disputed that law enforcement saw Defendant walk to the SUV wearing only a T-shirt and jeans with no sweater, but that when walking away from the SUV on a sunny day in September that was warm enough for him to be only in a T-shirt, he curiously had a sweater wrapped around his waistband, an area of the body where in Detective Carrero's experience, firearms are often kept. Fourth, while at the SUV, Defendant was observed looking around the immediate vicinity, which law enforcement believed was suspicious. *See United States v. Harrison,* 2018 WL 4405892, at *8 (E.D. Pa. Sept. 17, 2018) ("A suspect's furtive movements can contribute to an officer's reasonable suspicion that criminal activity is afoot."). After wrapping the sweater wrapped around his waistband where there was a possible weapon, Defendant began walking towards the Funeral Home where law enforcement believed retaliation could occur.

Thus, considering the totality of the circumstances, the Court finds that the Government has met its burden to show by a preponderance of the evidence that law enforcement had reasonable suspicion that Defendant was concealing a weapon to justify a valid *Terry* stop and search for weapons in the scope of that stop.

### B. Stop and Frisk

Not only does Defendant dispute that law enforcement had reasonable suspicion to justify a valid *Terry* stop as he was "walking harmlessly on the streets of Newark," Defendant posits that officers did not conduct a valid investigatory stop because he was seized and immediately placed under arrest prior to questioning him or before he pulled away or was frisked. Thus, Defendant asserts that his warrantless arrest required a showing of probable cause, not merely reasonable suspicion. However, Detective Castro's testimony, which the Court deems credible, establishes that law enforcement conducted a valid *Terry* stop. The warrantless arrest occurred *after* Defendant was questioned and frisked. In fact, prior to being frisked, Defendant grabbed his waistband and attempted to walk away, conduct which contributed to the determination of reasonable suspicion. *See Spears v. Leporace,* 449 Fed. Appx. 187, 190 (3d Cir. 2011) (observation of defendant adjusting an unknown item similar to a gun in his waistband established reasonable suspicion).

Because the gun and ammunition were obtained pursuant to a valid investigatory stop and frisk founded on reasonable suspicion of criminal activity, they are not fruit of the poisonous tree. *See United States v. Brown,* 448 F.3d 239, 244 (3d Cir. 2006). Accordingly,

5

the discovery of the gun and of the ammunitions are factors in the determination of probable cause for the warrantless arrest.

### C. Probable Cause for Warrantless Arrest

A warrantless arrest by law enforcement is reasonable under the Fourth Amendment only where there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "To determine whether an officer had probable cause to arrest an individual," a court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotations and citation omitted). Probable cause requires a "reasonable ground for belief of guilt" and "that the belief of guilt must be particularized with respect to the person to be searched or seized." *Id.* In other words, there must be a "probability, and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). While probable cause is a determination only courts can ultimately make, courts are to afford deference to the "on-the-scene conclusion" of officers and also must remember that officers may "'draw inferences and make deductions ... that might well elude an untrained person.'" *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

In examining the events leading up to the arrest, officers had reasonable suspicion that criminal activity was afoot. *See* discussion *supra.* Once the firearm and ammunition were found, under New Jersey law, there is a presumption that the possession of a handgun is unlawful. *See* N.J.S.A. 2C:39-2(b). Thus, law enforcement had probable cause to believe that Defendant possessed the handgun without a permit as required under N.J.S.A. 2C:39-5(b)(1). Moreover, that Defendant was found in possession of an extended magazine and hollow nose bullets was a basis for probable cause to believe that Defendant was in violation of N.J.S.A. 2C:39-3(j) (unlawful to possess large capacity ammunition magazine unless assault firearm is registered and magazine maintained and used for competitive shooting matches sanctioned by the Director of Civilian Marksmanship of the United States Department of the Army) and of N.J.S.A. 2C:39-3(f)(1) (unlawful to possess hollow nose bullet unless person is law enforcement officer or engaged in traveling to or from target range, exhibition of firearms, or a place for purpose of hunting or fishing).

Accordingly, the Court concludes that the Government has met its burden to show by a preponderance of the evidence that the warrantless arrest of Defendant was supported by probable cause.

### III.  CONCLUSION

For the foregoing reasons, Defendant Duwann Elliott's motion to suppress, ECF No. 51, is **denied.** An appropriate Order accompanies this Opinion.

Dated: December 2, 2021

WILLIAM J. MARTINI, U.S.D.J.

7